## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| _____ ) | |
| In re: ) | Chapter 13 |
| ) | Case No. 08-30930-HJB |
| WILLIAM J. SZENDA, ) | |
| ) | |
| Debtor ) | |
| _____ ) | |

### MEMORANDUM OF DECISION

Chapter 13 debtor, William J. Szenda (the "Debtor"), seeks to assume a sublease for the non-residential real estate where he operates a restaurant franchise. The sublessor and franchisor object to assumption of the sublease, because they contend that, before the Debtor can assume the sublease under 11 U.S.C. § 365(a), cross-default clauses in the franchise agreement and sublease require the Debtor to cure monetary defaults related to his operation of a second franchised restaurant. Accordingly, this Court must determine whether 11 U.S.C. § 365(b) requires the Debtor to cure those defaults in order to assume the sublease.

I.    FACTS AND TRAVEL OF THE CASE

    A.    **The Millbury Agreements**

The Debtor is a named franchisee in two franchise agreements (the "Franchise Agreements") for the operation of Subway sandwich shops in Massachusetts. The Debtor

and the franchisor, Doctor's Associates, Inc. ("DAI"),[1] executed the first franchise agreement in June 2000 relating to the operation of a Subway franchise in Millbury, Massachusetts (the "Millbury Store").[2] On the same date, the Debtor entered into an agreement with Subway Real Estate Corporation ("SREC") to assume a sublease for 41 Canal Street, Millbury, Massachusetts (the "Millbury Location," the "Millbury Lease").[3] The stated purpose of the Millbury Lease is to allow the Debtor to operate the Millbury Store.[4]

The Millbury Lease provides, in Paragraph 6, that the lease can be terminated on ten-days notice in the event of a default on the associated franchise agreement. Specifically, the lease states that the Debtor "understands that the Sublease for the [Millbury Location] and his rights to occupy same may be terminated by Sublessor in the event that he defaults in any of his obligations under a certain Franchise Agreement executed by him with Doctor's Associates, Inc. on 6/5/00 . . . . [the Millbury Franchise

---

[1] DAI is a Florida corporation, the trademark holder of the word SUBWAY in the United States, and the entity through which franchise agreements are entered for the operation of Subway stores.

[2] The agreement (the "Millbury Franchise Agreement") indicates that the franchise (Franchise No. 12948) was transferred from the previous franchisee to the Debtor.

[3] The Millbury Location was initially the subject of an Indenture of Lease between Mary Purcell and Stephen Estabrook as lessors and SREC as lessee (the "Millbury Master Lease") commencing August 1, 1992 and, as amended, to extend through July 2010.

[4] Paragraph 6 of the Millbury Lease states: "the purpose of this Sublease is so that the Sublessee can operate a SUBWAY Sandwich Shop under the terms of his Franchise Agreement . . . ." The Millbury Master Lease also specifically notes that the premises are intended for use as a restaurant and provides that the lease can be assigned or sublet to any bona-fide Subway licensee or franchisee. In accordance with its stated intention, DAI executed a sublease for the Millbury Location in 1992 to a Subway franchisee, which sublease was twice assigned to subsequent franchisees prior to assignment to the Debtor in 2000.

Agreement]."[5]

The Millbury Franchise Agreement, in turn, is terminable pursuant to section 8 ("Section 8") of that agreement:

> a. If we give you ten (10) days' written notice, we may . . . terminate this Agreement if . . . (ii) you fail to pay any money you owe us, our Affiliates, SFAFT, the landlord of the premises, or any amounts we may become liable to pay because of your action or omission . . . .
>
> b. If we give you ninety (90) days' written notice, we may . . . terminate this Agreement if you (i) do not substantially perform all of the terms and conditions of this Agreement not otherwise covered in Subparagraph 8.a., . . . or (iv) you become insolvent, make an assignment for the benefit of creditors or seek bankruptcy relief, either reorganization or liquidation, in any court, legal or equitable . . . .

B.   **The Worcester Agreements**

In February 2006, the Debtor entered into a second franchise agreement with DAI in order to operate a Subway sandwich shop in Worcester, Massachusetts (the "Worcester Store"). Section 8 of the franchise agreement for the Worcester Store (the "Worcester Franchise Agreement") is identical to that contained in the Millbury Franchise Agreement. As with the Millbury Store, the Debtor assumed a sublease (the "Worcester Lease") for the Worcester Store premises (the "Worcester Location").[6]

While business at the Millbury Store was (and apparently still is) profitable, business at the Worcester Store failed to meet the Debtor's expectations. By April 2008, the Debtor had stopped paying rent for the Worcester Location. On April 8, DAI and SREC noted the

---

[5] Together, the Court will refer to the Millbury Franchise Agreement and the Millbury Lease as the "Millbury Agreements."

[6] Together, the Court will refer to the Worcester Franchise Agreement and the Worcester Lease as the "Worcester Agreements."

3

Debtor's defaults under the Worcester Franchise Agreement and the Worcester Lease in separate letters to the Debtor. In their letters, DAI and SREC informed the Debtor that the Worcester Agreements would terminate in ten days unless full payment of the arrears was earlier received. The Debtor did not cure the defaults under the Worcester Agreements, and the parties agree that those agreements have terminated.

C. **The Bankruptcy Case**

On June 25, 2008, the Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code[7] (the "Bankruptcy Code" or the "Code"), and filed a plan of reorganization (the "Plan") on July 3, 2008.[8] Shortly thereafter, on August 13, 2008, SREC and DAI (together, "Subway") filed a joint motion requesting the Court to lift the automatic stay imposed by §362(a) of the Code (the "Motion for Relief from Stay"), see 11 U.S.C. § 362(a), so that Subway could proceed with its rights under a pre-petition judgment for possession relative to the Worcester Location *and* so that Subway could proceed to terminate the Millbury Agreements pursuant to their terms. Although the Motion for Relief from Stay did not identify any arrears in the Debtor's monetary obligations relative to the Millbury Store, it stated that the Millbury Franchise Agreement had been "[t]erminated upon filing for bankruptcy." Ultimately, the Court granted relief from the automatic stay with regard to the Worcester Store, but denied relief with respect to the Millbury Store.

---

[7] See 11 U.S.C. § 101, et seq.

[8] The plan lists no arrears on secured claims and provides that several of the Debtor's secured creditors will be paid outside the plan. The plan further provides for full payment of the Massachusetts Department of Revenue's ("MDOR") priority claim for "Meals Tax," estimated at $25,000. The total unsecured claims were listed as $80,048.08, to be paid a 6.67 percent dividend. The certificate of service reflects that the Plan was served on "Subway" and "Subway Corporation"; the address used to serve notice of the Plan on both is identical to the address listed for DAI and SREC on the earlier-referenced notice-of-default letters.

4

Thereafter, the Debtor received an extension of time to assume or reject the Millbury Lease pursuant to § 365 of the Bankruptcy Code, see 11 U.S.C. § 365, and on January 12, 2009, the Debtor filed his motion to assume the Millbury Lease (the "Motion to Assume"). Not surprisingly, Subway has objected.

II.     POSITIONS OF THE PARTIES

Subway objects to the Debtor's assumption of the Millbury Lease on grounds that the Debtor is in default of the Millbury Lease, which default will not be promptly cured, as required for assumption under § 365(b)(1) of the Bankruptcy Code. The default of the Millbury Lease, argues Subway, arises by virtue of the Debtor's default under the Millbury Franchise Agreement. And the breach of the Millbury Franchise Agreement, in turn, arises from the Debtor's defaults under the Worcester Agreements.

More specifically, Subway directs the Court's attention to Section 8 of the Millbury Franchise Agreement, which provides that the agreement may be terminated if the franchisee "fail[s] to pay any money [the franchisee] owe[s] to [DAI, its affiliates, or the landlord], or any amounts [DAI and its affiliates] may become liable to pay because of [the franchisee's] action or omission . . . ." Subway contends that – notwithstanding the absence of a monetary default – the Millbury Franchise Agreement is in default because the Debtor has failed to pay amounts owed to Subway and Subway became liable for certain amounts in connection with the Debtor's defaults under the Worcester Agreements. Thus, in order to cure the default of the Millbury Franchise Agreement, Subway asserts that the Debtor would have to cure the amounts owed pursuant to the Worcester Agreements, which, as was conceded, the Debtor cannot do. As the default will not be cured, Subway

5

says the Millbury Lease may not be assumed.

The Debtor disputes Subway's interpretation of the Millbury Franchise Agreement. The Debtor would have the Court find that the language in Section 8[9] of the Millbury Franchise Agreement is ambiguous. Arguing that the Millbury Franchise Agreement is a "contract of adhesion," and should be construed against Subway, the Debtor urges the Court to find that this provision refers only to amounts owed relative to the *Millbury* Franchise Agreement. As Subway does not claim a monetary default arising from *that* franchise agreement, neither of the Millbury Agreements are in default. Thus, the Debtor says, he may assume the Millbury Lease.

Additional arguments were raised in Subway's opposition to the Motion to Assume which were either not clearly developed or are plainly foreclosed by well-established case or statutory law. For instance, Subway has consistently included in various pleadings an assertion that the Franchise Agreements are not executory as they are personal service contracts not readily transferable by the Debtor. But the Debtor, curiously, has not sought to assume the Millbury Franchise Agreement.[10] Accordingly, the Court need not make the determination here whether the franchise agreement is executory, though it would be inclined to find that it is.[11] To the extent this statement is intended to urge a finding that

---

[9] Specifically, that "we [DAI] may . . . terminate this Agreement if . . . (ii) you owe any money to us, our Affiliates, SFAFT, the landlord of the premises, or any amounts we may become liable to pay because of your action or omission . . . "

[10] The time for doing so has not yet expired. See 11 U.S.C. 365(d)(2).

[11] See, e.g., Sir Speedy, Inc. v. Morse, 256 B.R. 657, 659 (D. Mass. 2000) ("Courts have generally accepted the proposition that franchise agreements that have not been terminated as of commencement of a bankruptcy are exec utory contracts under the Bankruptcy Code."); Shell Oil Co. v. Anne Cara Oil Co., Inc. (In re Anne Cara Oil Co., Inc.), 32 B.R. 643, 647 (Bankr. D. Mass. 1983); see also In re Pioneer Ford Sales, Inc., 729 F.2d 27 (1st Cir. 1984) (generally treating

either of the Millbury Agreements are not assumable pursuant to § 365(c)(1),[12] the First Circuit Court of Appeals' holdings in <u>Summit Investment & Development Corp. v. Leroux</u>, 69 F.3d 608 (1st Cir. 1995), and <u>Institut Pasteur v. Cambridge Biotech Corp.</u>, 104 F.3d 489 (1st Cir. 1997), plainly dictate otherwise.[13]

As the Court stated at the conclusion of the hearing on the Motion to Assume, that leaves only one issue:

---

"personal services contracts" as a type of executory contract in discussion of § 365(c)(1)(A)).

[12] Section 365(c)(1) prohibits the assumption or assignment of an executory contract or unexpired lease,

> whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if –
>
> (1)  (A) applicable law excuses a party, other than the debtor, to such . . . lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession . . . ; and
>
>   (B) such party does not consent to such assumption or assignment
>
> . . . .

11 U.S.C. § 365(c)(1).

[13] At the hearing on the Motion to Assume, Subway also argued that the Debtor could not provide adequate assurance of future performance as required by 11 U.S.C. § 365(b)(1)(C) because the $25,000 debt owed to the MDOR casts doubt on the feasibility of the Debtor's Plan. But the Court held that Subway's reliance on the MDOR debt to argue against adequate assurance of performance and feasibility of the Plan was waived, as Subway has filed no objection to the Debtor's Plan. <u>Hr'g Tr.</u> 9:23-11:21, Feb. 4, 2009; <u>see</u> Massachusetts Local Bankruptcy Rule 13-8 ("Any objection to confirmation of a chapter 13 plan shall be filed no later than . . . (I) thirty (30) days after the first date set for the section 341 meeting . . . .").

In addition, Subway's earlier assertion in the Motion for Relief from Stay that the Debtor's bankruptcy filing constituted either a default under or termination of the Millbury Franchise Agreement (an argument which appears to have been wisely abandoned in the opposition to the Motion to Assume) is barred by the plain language of § 365(b)(2)(B) and § 365(e)(1)(B). <u>See</u> 11 U.S.C. § 365(b)(2)(B) (the cure requirement for assumption "does not apply to a default that is a breach of a provision relating to . . . the commencement of a case under [the Bankruptcy Code] . . . ."); 11 U.S.C. § 365(e)(1)(B) (prohibiting post-petition termination or modification of an executory contract or lease "solely because of a provision in such contract or lease that is conditioned on . . . the commencement of a case under [the Bankruptcy Code] . . . .").

whether the debts of . . . Worcester Location . . . must be paid by the Millbury Location in order to establish the cure amount.

III.  DISCUSSION

As this Court has previously stated,

One of the most powerful tools in the . . . debtor-in-possession's bankruptcy tool kit is the ability to, subject to court approval, "assume or reject any executory contract." [14]

Gray v. Western Envtl. Servs. & Testing, Inc.(In re Dehon, Inc.), 352 B.R. 546, 558 (Bankr. D. Mass. 2006); see also Eagle Ins. Co. v. Bankvest Capital Corp. (In re Bankvest Capital Corp.), 360 F.3d 291, 295-96 (1st Cir. 2004).  And the same holds true for a debtor's ability to assume and reject its unexpired non-residential leases of real estate.  See 11 U.S.C. § 365(a).  Subway is correct in its assertion that, generally speaking, bankruptcy law does not abate the terms of the Debtor's executory contracts and leases.  See, e.g., Shell Oil Co. v. Anne Cara Oil Co., Inc. ( In re Anne Cara Oil Co., Inc.), 32 B.R. 643, 647 (Bankr. D. Mass. 1983).  But this principle is not without its exceptions, one of which is dispositive of the issue presented here.

While assumption of a non-residential real estate lease under § 365(a) is subject to

---

[14] There is no argument here that the Debtor lacks authority to assume the Millbury Lease, and the Court adopts this posture here as well.  See, e.g., 11 U.S.C. § 365(a) ("the *trustee* . . . may assume or reject any executory contract or unexpired lease of the debtor"); 11 U.S.C. § 1322(f) (debtor's Chapter 13 plan may, "subject to section 365 . . . provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor . . . "); In re Kirsch, 242 B.R. 77, 79 (Bankr. M.D. Fla. 1999) ("Though Section 365(d) provides that the trustee is permitted to assume or reject unexpired leases, courts interpret the Bankruptcy Code as to allow chapter 13 debtors to assume or reject leases under this Section."); see also In re Brewer, 233 B.R. 825, 828 (Bankr. E.D. Ark. 1999); In re Scott, 209 B.R. 777, 781 n.5 (Bankr. S.D. Ga. 1997); In re Hall, 202 B.R. 929, 932 n.2 (Bankr. W.D. Tenn. 1996).

the cure requirement of § 365(b)(1),[15]

> the trustee [*viz.*, the debtor-in-possession] is *only* required to perform under that discrete contract or lease, not under other, substantially unrelated agreements. This principle applies [even] where distinct agreements are linked by a cross-default clause, providing for a loss of rights under one agreement if another agreement is breached.
>
> Thus, . . . assumption under § 365 is subject to a "well-established" cross-default rule: "[C]ross-default provisions do not integrate executory contracts or unexpired leases that otherwise are separate or severable." In light of the unanimity of the reported decisions recognizing the cross-default rule and Congress's recent reenactment of the Bankruptcy Code without amending § 365 to change the rule, the cross-default rule is indeed well established.

United Air Lines, Inc. v. U.S. Bank Trust Nat'l Assoc. (In re UAL Corp.), 346 B.R. 456, 467-68 (Bankr. N.D. Ill. 2006) (citations omitted) (emphasis in original).[16] The court's well-reasoned analysis underlying its conclusion reached in UAL Corp. was thorough, compelling, and fully supported by extant case law. It need not be further duplicated.

Here, there is no argument or evidence to suggest that the Millbury Agreements and the Worcester Agreements are "substantially connected to one another, so that a failure to enforce the clause would deprive the nondebtor party of an essential part of its bargain."

---

[15] See Bankvest, 360 F.3d at 296. Section 365(b)(1) provides:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .

11 U.S.C. § 365(b)(1).

[16] See also The Shaw Group, Inc. v. Bechtel Jacobs Co., LLC (In re The IT Group ), 350 B.R. 166, 177 (Bankr. D. Del. 2006) (noting uniformity of decisions recognizing the cross-default rule).

Id. at 468-69. Even assuming the provisions identified by Subway constitute cross-default clauses linking the Worcester and Millbury Franchise Agreements, the agreements are not "economically interdependent" – there is no indication that the "consideration for one agreement supported the other"[17] or that Subway "would not have entered into one agreement without the other."[18]

---

[17] The Millbury Franchise Agreement specifically states, at paragraph F: "You acknowledge the only consideration we receive from you . . . consists of the Franchise Fee, the Royalty and performance of your other promises under this Agreement."

[18] See DB Structured Prod., Inc. v. Am. Home Mortgage Holdings, Inc. (In re Am. Home Mortgage Holdings, Inc.), 402 B.R. 87, 100 (Bankr. D. Del. 2009) ("contracts are economically interdependent when the consideration underlying each contract supports *the other* contract, such that non-performance under one contract would constitute a failure of the consideration underlying *the other* contract"); IT Group, 350 B.R. at 179 (economic interdependence is "critical feature" of agreements where cross-default provisions are upheld; cross-default clause unenforceable where no evidence that contracts were "economically interdependent" or "intertwined") (citing UAL); UAL Corp., 346 B.R. at 469-70 ("courts have repeatedly refused to enforce cross-default clauses that attempt to link parallel contracts with unrelated consideration") (collecting cases); In re Adelphia Bus. Solutions, Inc., 322 B.R. 51, 60 (Bankr. S.D.N.Y. 2005) (cross-default provisions in separate leases for separate locations in same building were not enforceable to prevent assumption of one lease and rejection of the other where the leases were "not inextricably intertwined and interdepedent"); In re Plitt Amusement Co. of Wash., Inc., 233 B.R. 837, 847 (Bankr. C.D. Cal. 1999) ("in the bankruptcy context, cross-default provisions do not integrate otherwise separate transactions or leases"); Kopel v. Campanile (In re Kopel), 232 B.R. 57, 65 (Bankr. E.D.N.Y. 1999) ("Courts have refused to enforce cross-default provisions in situations where the cross-defaulted agreements are not interrelated."); EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 596 (S.D.N.Y. 1992) (cross-default provisions not enforceable and leases not construed as single instrument where leases were for separate spaces in same building, but did "not have the same subject matter or purpose, and one agreement [was] not the subsidiary of the other"); In re Wheeling-Pittsburgh Steel Corp., 54 B.R. 772, 779-80 (Bankr. W.D. Pa. 1985) (cross-default provisions unenforceable among separate insurance contracts); compare Lifemark Hosp., Inc. v. Liljeberg Enter., Inc. (In re Liljeberg Enter., Inc.), 304 F.3d 410, 446 (5th Cir. 2002) (cross-default provisions enforceable where agreements were part of overall transaction to finance building of hospital and non-enforcement would "thwart [the non-debtor's] bargain in agreeing to enter into the [ ] agreement"); Beatriz Ready Mix, Inc., No. 08-04457(SEK), 2009 WL 255890 (Bankr. D.P.R. Feb. 3, 2009) (unexpired lease for manufacturing premises and transportation agreement for hauling raw materials used in manufacturing were economically interdependent where they were part of sale of entire business); In re Buffets Holdings, Inc., 387 B.R. 115, 128 (Bankr. D. Del. 2008) (where evidence established that Master leases were intended to integrate separate leases, Debtor could not assume or reject individual leases but had to assume or reject Master Leases as a whole); Kopel, 232 B.R. 57 (lease and non-lease agreements constituted a single transaction – the sale of a veterinary business – such that Debtor

The Millbury Agreements were entered into six years *prior* to the execution of the Worcester Agreements. Even if Subway were able to demonstrate that its ability to call a default on the Worcester Agreements on account of a default on the Millbury Agreements was essential to the Worcester transaction, the reverse cannot be true, as the Worcester Agreements were not in contemplation at the time the Millbury Agreements were signed. In short, it simply cannot be said that the Millbury Agreements and the Worcester Agreements were part and parcel of the same bargain, regardless of the inclusion of the cross-default clause by which Subway seeks to integrate them. See UAL Corp., 346 B.R. at 469-70 ("courts have repeatedly refused to enforce cross-default clauses that attempt to link parallel contracts with unrelated consideration").

Absent a finding that the Worcester and Millbury Agreements are economically interdependent – a finding necessary for the enforcement of a cross-default clause – the Court rules that the Debtor is not required to cure the defaults and related monetary obligations under the Worcester Agreements in order to assume the Millbury Lease. And the Court having also found that Subway failed to establish any additional cure amounts owed in relation to the Millbury Agreements, the Debtor appears to have overcome the requirements of §§ 365(b)(1)(A) and (B).

However, § 365(b)(1)(C) remains a problem in one respect. The Debtor has not sought to assume the Millbury *Franchise Agreement*. While the Millbury and Worcester Agreements are not themselves integrated or interrelated, the Millbury Franchise

---

could not assume one agreement without curing defaults under others).

11

Agreement and the Millbury Lease *are* economically interrelated and interdependent[19] – there is every indication that the Millbury Lease would not have been assigned to the Debtor in the absence of the Millbury Franchise Agreement. The parties have not argued otherwise. And since it is clear that the sole purpose of the Lease was to provide space for the Debtor- franchisee to conduct business under the Franchise Agreement, the Court finds that the Debtor's assumption of the Millbury Lease requires the assumption of the Millbury Franchise Agreement.[20]

Since the Debtor has asked to assume only the Millbury Lease, the Debtor's motion will be not be granted unless the Debtor seeks approval for the assumption of the Millbury Franchise Agreement, either by motion or an amended plan. Absent such action on the Debtor's part, the Motion to Assume presently before the Court must be denied.[21]

IV. CONCLUSION

Because (1) Subway's opposition to the Debtor's Motion to Assume the Millbury Lease rests on the premise that the Millbury Agreements are in default based on the Debtor's defaults under the Worcester Agreements, (2) the Court finds that the purported cross-default clause is unenforceable for purposes of § 365, and (3) the Court finds that the Millbury Lease is not in default, the Court overrules the opposition and will grant the Motion

---

[19] See, e.g., American Home Mortgage, 402 B.R. at 100 ("multiple, separately documented agreements may constitute a single, integrated transaction").

[20] See, e.g., Beatriz Ready Mix, 2009 WL 255890, at *3, *5 (where asset purchase, lease, and transportation agreements were parts of a "single, interdependent, unified business transaction," and were integral to price, Debtor had to assume or reject the agreements as a whole)

[21] Subway waived the time limitations set forth in § 365(d)(3) in open court, pending final disposition hereof. See Hr'g Tr. 13:4-12, Feb. 4, 2009.

to Assume – but only if the Debtor files, on or before June 15, 2009, and the Court allows or confirms, respectively, a motion to approve the assumption of the Millbury Franchise Agreement or an amended plan providing for the assumption of the franchise agreement; otherwise, the Motion to Assume the Millbury Lease will be denied.

An order in conformity with this memorandum will issue forthwith.

DATED: June 3, 2009                    By the Court,

*[signature]*

Henry J. Boroff
United States Bankruptcy Judge